Good morning. May it please the Court. My name is Susan Hill and I represent the petitioner, Ms. Gwarak Agadzhanyan. Your Honours, in front of the immigration judge, Ms. Agadzhanyan, the judge made a finding that she had been persecuted in the past in Azerbaijan and then she went on to find that firm resettlement had occurred and that Ms. Agadzhanyan had gone to Russia and lived there for nine years and the judge determined she had firmly resettled. We contend that that is not true. The evidence does not support such a finding. Ms. Agadzhanyan lived in Russia for nine years but she was not resettled there to an extent that it can be determined that she had been offered permanent residence or any kind of a citizenship there. While she was there, being an ethnic Armenian, she was subjected to further persecution and her lifestyle was limited in such a way that she did not live a full life such as a normal citizen. I wonder if those two things are severable and let me explain what I mean. Let's suppose there were unequivocal evidence that she had become a citizen, you know, documents and so forth, and also she suffered persecution or discrimination or ill treatment of some sort. That would not demonstrate the absence of firm resettlement. It might demonstrate firm resettlement plus persecution in the next country. So I have some difficulty with the argument that evidence of mistreatment, whatever level it rises to, by itself demonstrates the lack of firm resettlement or lack of citizenship. In other words, there's such a thing as second class citizenship but it might still be firm resettlement. With that distinction in mind, I wonder if you could explain to me why there is no substantial evidence to support a finding of firm resettlement. Yes, Your Honor. As the statute in the regulation state, if a person is determined to have been offered permanent residency or citizenship, the language still states that firm resettlement will not be found if the person did not essentially, I'm paraphrasing, but live the same kind of life as a regular citizen would and that the government was so restrictive upon that person that they did not have basic human rights such as housing, employment, the right to travel. She had housing and employment, yes. I disagree that she had employment. She tried to apply for jobs and her husband as well when he was still alive but they had no propiska as the internal passport and therefore they were denied employment for that reason. That's what she stated and the judge found her credible. She was able to find under the table work, which was just a fortuitous circumstance. She found houses to do laundry in and she did some cleaning but that was despite the government repressing her and despite the government refusing her any right to work. So it was fortuitous on her part that she could eke out a living. However, it wasn't the same kind of rights to citizenship as the normal, let's say, Slavic Russian would have had. Additionally, when she tried to go to a doctor, she was denied that right because she didn't have the propiska and again, the propiska was denied to her because she was an ethnic Armenian. Whenever she asked the government for any kind of assistance, she was denied that assistance. She had that robbery incident and when they complained to the police, they were told to leave the country and then when they filed a complaint higher up, they were attacked by the Cossacks who the background documentation showed are strongly tied to the government in that area. So it can, I think, easily be said that the Cossacks are state actors as far as the persecution that they perpetrated upon Ms. Aghazanian and her husband. Pretty much in every instance, she was not able to live a, quote, normal life like your average citizen in Russia would have been able to live. And for that reason, I believe under the statute and the regulations, even though let's say that the evidence did show that she was granted citizenship in Russia, she still falls under that caveat that the language of the law spells out. Counsel, if we were to agree with your initial argument that there was no firm resettlement in Russia, then Azerbaijan would be the country that we would look at to determine whether there had been past persecution. And wouldn't we have to remand the case for that sort of analysis in the first instance by the agency? It seems as though perhaps yes, because the judge merely found that past persecution was established. And though that raises a rebuttable presumption of future persecution, that was not addressed by the judge. And I did address it in my briefings here just to be safe, but I don't believe it was addressed by the lower courts. So the agency, there would have to be an opportunity for the government to rebut any presumption of well-founded for future persecution, so it would have to go back again. Correct. If we agreed with your initial argument. Correct. I believe it would have to. Just to finish up, if I may, I just want to underscore the fact that Ms. I believe that the record, her testimony is just replete with many instances of where she attempted to and could not get the basic rights for citizenship. Most notably was the propiska. There were some issues as far as the type of passport that she had been issued by the government. However, I believe case law here in this circuit states that evidence of a certain type of passport is not conclusive, especially where that government is trying to get rid of a person, an undesirable person, such as Ms. Aghazanian was. She was issued a USSR passport, not a Russian passport. The government's documents that they had submitted in front of the judge, it was, I believe, Exhibit 15. In there it also said, documents confirming Russian Federation citizenship were a Russian Federation passport. She never was granted such a passport. Again, she was given the old prior USSR passport. The incident when she was attacked. Excuse me, is there any, I don't recall this, and it may be there, but is there anything in the record that explains what the Russian government is obliged to do with an old USSR passport? That is, does it have to honor it and then replace it with a new Russian Federation passport, or is that record silent on that? I don't recall seeing anything in the record regarding that, Your Honor. I don't recall. If I may continue, when her husband and she were attacked, admittedly there is no direct evidence what the motivation for that attack was, but most importantly was what happened after the attack and the government's failure to address their grievances. Moreover, the Cossacks attack upon them when they did try to pressure the government to address their grievances. That is the most significant part of that incident. And then finally, Ms. Zagidzanyan also raised a claim under her religion. She was in fear of being persecuted on her religion if she went back. I believe the briefing addresses that adequately. If the Court doesn't have any further questions on these issues, then I will reserve the remainder of my time. Counsel, is your client also seeking asylum from Russia? In the event it's determined that she has firmly resettled in Russia, then yes, she is. And I believe the briefing addressed why she qualifies for that. All right, thank you. Thank you very much. Thank you. We'll hear from the governor. Thank you, Your Honor. Ari Nazaroff for the government again. Your Honors, the only real issue before you today is whether Petitioner has rebutted her presumption of firm resettlement in Russia. She has not rebutted that presumption. The evidence substantially supports the Board's and IJA's decision. She was issued a passport in 1999 indicating she's a Russian citizen and national. This is consistent with the citizenship laws that everyone on that territory in 1992 would become a Russian citizen. And they had a year to opt out of it. She never opted out of it. I think it's something very important, Your Honor. I'm not sure this is in the record, but just because she was issued a USSR passport in 1999 doesn't necessarily mean she was issued something as a second-class citizen because Russia is not a wealthy country and it probably used the same passport when it became a Russian federation. You're speculating now. I am, Your Honor. Okay. What is the significance of the propiska in Russia? Your Honor, my understanding of the propiska in Russia is that during the Soviet times it would allow you to work and go to certain cities. In this case, though, Petitioner has brought up propiska, but it's unclear that the propiska in any way has an effect necessarily now. Petitioner has been able for nine years to support herself, find housing, maintain her lifestyle, practice her religion. But none of that was of the type that's available to Russian citizens with a propiska. Am I saying that right? Propiska, yes, Your Honor. Right? I'm sorry, could you repeat your question? The type of work, cleaning houses and where she lived, in fact, her husband couldn't get a job, that's not consistent with Russian citizens who have the propiska. I don't believe so, Your Honor. I think that would be consistent with just her skill level. Well, there was a finding of credibility in this case, right? I believe so, yes, Your Honor. And she testified to that, that the only job she could find was cleaning houses, and that she couldn't get medical care, and that she couldn't find normal Russian housing, Russian housing that was available to the ordinary citizen as is required under the statute. Well, she did testify to that, Your Honor. But it's found credible, so we have to believe it, right? Well, not necessarily. Why not? Well. Is there contrary testimony on those points from someone else? Well, let me say that, yes, she was found credible, and her testimony must be taken as true. However, taking the totality of the circumstances, there's nothing in this case that compels necessarily, just because there's evidence going another way doesn't mean that it compels a different result. But is the evidence going the other way? The evidence just mentioned that she wasn't able to find housing. She was able to find housing. She was able to go to church. I'm sorry, go ahead, Judge Ross. But her testimony was that she was not able to find the same type of housing that she would have obtained if she had a ProPISCA. The evidence was she found a yard. The housing was in a yard of someone else's home because that's all she could get without a ProPISCA, and the country reports confirm that, that ProPISCA was used to bestow government benefits. So what evidence is there to the contrary in the record? Well, she was able to find housing. Maybe it's not the housing she wanted, Your Honor, but she was able to. Maybe she had to do a job, not the job she wanted. The point is, her testimony was she was not able to find housing that someone with a ProPISCA could find. So what evidence is there in the record to establish that the housing she found was comparable to what she could have found if she had a ProPISCA? Is there any evidence in the record to that effect? No, Your Honor. I can't off the top of my head give you the answer to that question. But looking at the totality of the circumstances, she was firmly resettled. She lived in Russia for nine years. She was able to get a Russian passport indicating that's her nationality. She was able to get a visa indicating she's a Russian national. There's nothing to show her movements were restricted by the government. Counsel, let me ask you something that I went over with opposing counsel as well. Assume for the sake of this question that we were to conclude that she was not firmly resettled. Would you agree that the case would then have to go back to the agency for an analysis of whether she would face future persecution in Azerbaijan? Let me just say as to the question, does it have to go back to the agency first or would we have to try to figure out in the first instance whether she would face persecution in Azerbaijan? Your Honor, I would have to say if the situation were like that, it would have to go back to the agency of first determination. However, I have not been able to find, the government has not been able to find a case law that says that a citizen of another country, a citizen who has citizenship in another country, has found not to be resettled in that country. In this case. Counsel, are you saying you haven't found a case where there's been a holding that if the citizenship is subject to conditions that make it not comparable to, quote, regular citizenship, that firm resettlement is found? No, Your Honor. But where just without that caveat that there are restrictions, there's no indication there are any restrictions in this case, Your Honor. She was able to get a passport, find housing, maintain her lifestyle. Most importantly, Your Honor, when the incident, the robbery did happen, the government attempted to assist, the police attempted to assist. They had a lineup which Petitioner didn't go to. That bears on whether she was treated badly, but it doesn't bear on, in terms of whether she was persecuted in Russia, where she firmly resettled there, but it doesn't really bear on firm resettlement, does it? Well, Your Honor, it would bear as to that the government there didn't treat her necessarily as a second citizen. It allowed her. Maybe not in every way. I mean, that's, I guess it would bear on that. And there's no indication that she cleaned houses, but it's unclear what education she had to do something else or what skills she had to do something else. She wasn't a carpenter in Azerbaijan or a Ph.D. necessarily. So, Your Honor, it is the government's position that she was firmly resettled. And she had testified during the hearing on page 129 that she's a citizen of Russia several times. Finally. Your argument makes me wonder if you've even read 8 CFR section 208.15, because you keep saying she had housing. She had this. She had a job. That isn't what the statute requires. It requires that it be of the type that other citizens enjoy, not just a house, a job. Well, Your Honor, Russia is a poor country. Russian citizens who are not of her descent live like. Who is dead in the record? I can't off the top of my head give you a cite to the record, Your Honor. But also, the 1208, I'm looking at the statute point 15, talks about receiving citizenship, which in this case, petitioner has clearly received. She has a passport that says she's a Russian citizen. It's consistent with the Russian citizenship laws, and she has testified as to that, Your Honor. Again, the evidence has to compel a different result. In this case, the evidence doesn't compel a different result. Petitioner's counsel would like you to reweigh it, but that's not the standard of review. Finally, the immigration judge and the board correctly found the petitioner did not establish a nexus between the 1994 robbery and subsequent events and a protected ground. This court has held the criminal acts do not establish persecution in Gromley versus Ashcroft 364 at 1177 F3rd. Petitioner's counsel has testified that she was attacked by the government, essentially. This was a robbery. She was told during the robbery not to report it. Her husband went and reported it, and as a result, he apparently was killed. The police tried to investigate it. They tried to have a lineup, which she didn't go to. There was no reference. She testified on page 203 of the record. She didn't know why she was attacked, her and her husband were attacked. There's no reference to religion during the attack or ethnicity during the attack. And the petitioner remained in Russia five years after the attacks. For the reasons stated, the petition for review should be dismissed. One final point I'd like to make, Your Honor, is petitioner twice has testified that. Excuse me, counsel, do you mean dismissed or denied? Petitioner should be denied, Your Honor. Your Honor, petitioner claims she is not firmly resettled and the government in Russia has not helped her. But while she was in Azerbaijan, it was the Soviet troops who rescued her from the first incident and the second incident in the theater. Russian troops controlled by the government in Moscow. I don't think that also adds to her argument. Thank you, Your Honor. Thank you, Your Honors. As you pointed out, the test is whether the government severely restricted her or not with regard to the housing, the job, so on and so forth. The government here has asserted that there is a rebuttable presumption. We contend that that rebuttable presumption of firm resettlement never was raised. The evidence does not show that she was granted citizenship or nationality in Russia. In fact, we think it compels otherwise, given the fact that the laws are rather vague. The Russian law itself states if the person is permanently residing in Russia, they will be granted citizenship. However, she contends that she was not permanently residing in Russia. She wasn't treated as though she was permanently residing there, and her first opportunity she got to leave, she did take that chance and left. So assuming we disagree with you on that issue of whether or not she was a citizen, have you rebutted the presumption? Yes, I believe so, Your Honor, for the reasons that I already stated in the first part of the argument. Additionally, Ms. Zagidzani, and if I just may briefly conclude with that issue as to her citizenship, she did steadfastly maintain in front of the immigration judge that she was not a citizen of Russia. She did not believe she was a citizen. The asylum officer may have insisted and intimidated her into saying that she was a citizen, but in front of the judge, she never did. What is your interpretation of the document that's in the record, the U.S.S.R.? The Russian nationality law, Your Honor? Yes. I think it does hinge on the fact that it says if a person is permanently residing in Russia, they will be granted the citizenship, and I don't think she could be considered to have been permanently residing in Russia for all the treatment that she received and the fact that she did leave Russia and did not want to stay there. I believe this case is similar to the Ali case from this circuit. I believe it was from last year. The applicant had fled to another country and was not granted any kind of status and lived similarly to Ms. Agazzani, and she found under-the-table work. Counsel, the Citizenship Act does not reference treatment in terms of whether or not someone is a permanent resident. Would you agree with that? It does not specifically reference it. And, in fact, it just specifies a number of years that one has to physically reside there in order to be considered a citizen under the act. I'm not sure which section. Article 19. Article 19 says permanent residence is defined for foreign citizens and stateless persons a total of five years. It starts out permanent residence, and then it goes on to say if the person has been a permanent resident for a total of five years or three years, whatever. However, it doesn't really define what permanent residence is. She never was given any kind of permanent residence status. But it defines it as being five years residence. I guess we just disagree on the interpretation of that section, Your Honor. I don't read it the same way. As I was saying, I believe this is similar to the Ali case. Moreover, her quality of employment, as it was pointed out earlier, was not the same as regular citizens. She had a skill level far above cleaning houses and doing laundry, and so did her husband. The opposing counsel said she wasn't a carpenter or a Ph.D. Is there something in the record that tells us what her skill level was? She worked, I think, as a cashier in a bus station. I may be confusing the location of the bus. I believe she was a cashier there. I think that is a skill level above just cleaning houses and doing laundry for people. She seemed to expect that she could have gotten a better job. The key here, I believe, is whether the government did restrict her ability to live her life in Russia. She was afraid to go anywhere in Russia. She was afraid of her own government. She was afraid to seek their assistance after her husband was killed. She didn't go to the lineup. I believe that shows it's such a severe restriction. It cannot be said that she was free to move within the country. We don't know. She never tried because she was too afraid to do so. And finally, as far as the robbery, again, I emphasize it's not so much the robbery itself as how the government reacted to addressing her grievances afterwards. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted. The last case on the morning docket is Ms. Lightbody present? Yes.
judges: Graber, Wardlaw, Rawlinson